1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHANNON L. EDMONDS,

        Petitioner,

   v.

FRED FOULK, Warden,

        Respondent.

_____/

No. C 13-2490 CRB (PR)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

## INTRODUCTION

    Petitioner seeks federal habeas relief from his state convictions.  For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

    In 2010, a Lake County Superior Court jury found petitioner guilty of second degree murder, and two charges of assault with a deadly weapon and found true a great bodily injury enhancement.  Consequent to the verdicts, he was sentenced to a term of 15 years to life.  Petitioner sought, but was denied, relief on state judicial review.  This federal habeas petition followed.

    Evidence presented at trial showed that in 2009, petitioner and his co-defendant Melvin Norton stabbed and beat to death Shelby Uehling, the former short-term boyfriend of

petitioner's girlfriend, Patricia Campbell:

> Shortly after midnight on September 22, 2009, Shelby Uehling bled to death, under a tree, in a vacant lot near Clearlake. His death followed a fight with [petitioner] and Melvin Norton . . . The fight in which Uehling died was partially overheard by two nearby residents. One heard loud yelling that escalated into screaming, like someone was dying, and the sounds of 'adult fighting . . . progressively getting worse.' The other heard male voices 'beating up some guy' who was 'kind of pleading.' He thought he heard the sounds of a body being kicked. After he heard other voices say 'I cut his throat' and 'We got to go,' he called 911. As he was doing so, he heard the man who pleaded 'made a gasp.' This second man saw two men crouching over a body leaning against a tree. The pair then ran away.

> Uehling died from a cut carotid artery. He also had what the coroner described as a "fairly significant" cut wound to the back that penetrated the right lung. There were less serious 'slice' injuries to the back, abdomen, buttocks, left thigh, and left arm. Uehling also had blunt force damage to his throat that could have been caused by the ASP baton. The coroner described Uehling's body as having blunt force injuries 'almost . . . from top to bottom' that would be consistent with a severe kicking.

(Ans., Ex. F (State Appellate Opinion) at 2–5.)

Petitioner's defense was that he saw Norton and Uehling fighting, and he intervened only to protect Norton. (Id., Ex. B, Vol. 5, Part 1 at 1174–75, 1177, 1194–95; Part 2 at 1259–60 & 1267–68.) The mêlée became more violent, according to petitioner, who then had to fight to save his life. In the days before the mortal fight, Uehling sought to restart his relationship with Campbell, and was warned off by petitioner and Norton. (Id., Ex. F at 2–3.)

As grounds for federal habeas relief, petitioner alleges that (1) the trial court gave constitutionally flawed jury instructions[1]; (2) trial and appellate counsel rendered ineffective assistance[2]; (3) the prosecutor did not prove malice murder[3]; (4) the trial court abused its discretion when denying the right to impeach a prosecution witness; (5) there was prosecutorial misconduct; (6) the trial court erred by admitting of pictures of novelty

---

[1] This includes Claims 1 and 6 in the petition.

[2] This includes Claims 4, 8, and 11 in the petition.

[3] This includes Claims 3 and 5 in the petition.

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California

weapons; and (7) the cumulative effect of the alleged errors denied petitioner a fair trial.

## STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

United States District Court
For the Northern District of California

**DISCUSSION**

## I.    Jury Instruction

Petitioner claims that (A) the trial court violated his right to due process by giving erroneous jury instructions CALCRIM No. 334 ("Accomplice Testimony Must Be Corroborated[;] Dispute Whether Witness Is Accomplice") and CALCRIM No. 301 ("Single Witness Testimony").  More specifically, he alleges that the jury would have misunderstood the instructions to require corroborating evidence before petitioner's testimony, favorable to himself, could be considered.  (Pet. at 6; Mem. of P. & A. at 12–30.)

He also claims that (B) the jury instructions on general and specific intent were "unconstitutionally compound" and confused the jury.  (Pet., Mem. of P. & A. at 13–17.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.  In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

### A.    CALCRIM Nos. 334 and 301

CALCRIM No. 334, as read to petitioner's jury, is as follows:

Before you may consider the statement or testimony of [petitioner] or Melvin Norton as evidence against the other [petitioner], you must decide whether [petitioner] or Melvin Norton were accomplices.  A person is an accomplice if he is subject to prosecution for the identical crime charged against the [petitioner].

Someone is subject to prosecution if he personally committed the crime or if, one, he knew of the criminal purpose of the person who committed the crime; and two, he intended to and did, in fact, aid, facilitate, promote, encourage or instigate the commission of the crime or participate in a criminal conspiracy to commit the crime.

The burden is on [petitioner] to prove that it is more likely than not that [petitioner] and Melvin Norton were accomplices.  An accomplice does not need to be present when the crime is committed.  On the other hand, a person is not an accomplice just because he is present at the scene of a crime, even if he knows a crime is being committed and does nothing to stop it.  If you decide that a declarant was not an accomplice then supporting evidence is not required and you should evaluate his statement as you would . . . that of any other witness.

If you decide that a declarant was an accomplice, then you may not convict [petitioner] of Penal Code section 187(a) [i.e., murder] or Penal Code 245(a)(1) [i.e., assault] based on his statement alone.  You may use the statement of an accomplice to convict  [petitioner] only if, one, the accomplice's statement is supported by other evidence that you believe; two, the supporting evidence is independent of the accomplice's statement; and three, that supporting evidences tends to connect [petitioner] to the commission of the crime.

Supporting evidence, however, may be slight.  It does not need to be enough by itself to prove that [petitioner] is guilty of the charged crimes and it does not need to support every fact mentioned by the accomplice in the statement.  On the other hand, it is not enough if the supporting evidence merely shows a crime was committed or the circumstances of its commission.

The supporting evidence must tend to connect [petitioner] to the commission of the crime.  The evidence needed to support the statement of one accomplice cannot be provided by the statement of another accomplice.  Any statement of an accomplice that tends to incriminate [petitioner] should be viewed with caution.  You may not, however, arbitrarily disregard it.  You should give the statement the weight you think it deserves after examining it with care and caution and in light of all the other evidence.

(Ans., Ex. F at 5–6.)

CALCRIM No. 301, as read to petitioner's jury, is as follows:

Except for the testimony of [petitioner] and Melvin Norton, which requires supporting evidence, the testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence.

(Id. at 6.)

On appeal, petitioner contended that No. 334 "undermined and directly contradicted" No. 301.  The former instruction was flawed in that its corroboration requirement "unfairly singled out the defendants' testimony as suspicious and less deserving of belief than that of other witnesses."  This error lessened the burden of proof, and violated his right to a fair trial and to testify and present a defense.  (Id. at 6–7.)

United States District Court
For the Northern District of California

1    The state appellate court rejected petitioner's claims.  Viewing the instructions as a

2   whole, it held that "the jury was able to comprehend that CALCRIM 301 stated the general

3   rule of witness credibility, and that CALCRIM 334 stated the exception to that rule for

4   accomplice testimony."  (Id. at 7.)  It acknowledged that the instructions had an "inartful

5   phrasing" (id. at 1):

> We acknowledge that the beginning words of CALCRIM 301 as given —
> "Except for the testimony of [petitioner] and Melvin Norton, which requires
> supporting evidence" — might on their face be read to suggest that *all*
> testimony from [petitioner] and Norton must be corroborated.  [Footnote
> omitted.]  However, on the other hand, that construction is neutralized by the
> opening words of CALCRIM 334 — "Before you may consider the statement
> or testimony of [petitioner] or Melvin Norton *as evidence against the other
> defendant . . .*"  The italicized language told the jury that not all testimony by
> either [petitioner] or Norton was subject to the corroboration requirement, but
> only that testimony which was adverse to the other.  The idea that the jury
> should impose an automatic requirement of corroboration is also refuted by the
> instruction advising the jury that "If you decide that a declarant was not an
> accomplice then supporting evidence is not required and you should evaluate
> his statement as you would . . . that of any other witness."  And nothing in any
> of the closing arguments hints at an across-the-board requirement of
> corroboration for either defendant or Norton.

(Id. at 7–8.)  The state appellate court also addressed petitioner's "singling out" contention:

> [A]s the Attorney General points out, [petitioner]'s claim that the instruction
> "unfairly singled out the [petitioner's] testimony as suspicious and less
> deserving of belief than that of other witnesses" is contrary to considerable
> existing law.  There is nothing unfair about treating the testimony of an
> accomplice with caution because he "has the motive, opportunity, and means to
> attempt to himself at the other's expense" regardless of whether the accomplice
> is also a co[petitioner].  [Citation omitted.]  Thus, the jury was not "given
> contradictory instructions both to distrust accomplice-[petitioner]'s testimony
> and to treat it like any other testimony."  [Citations omitted.]  Finally, the trial
> court did not decide as a matter of law that [petitioner] and Norton were
> accomplices — even though they clearly met the test stated in the instruction
> — but left that decision to the jury.  Had the court made that decision, it would
> have indeed "singled out the [petitioner]'s" from other witness, but it would not
> have done so "unfairly."  To the contrary, by leaving this option to the jury, the
> instructions may have given [petitioner] precisely the advantage he now seeks,
> for if the jury concluded that [petitioner] and Norton were not accomplices, the
> issue of corroboration would never arise.
>
> [Petitioner]'s fallback argument is that his trial counsel's "failure to object to
> the court's instruction that the [petitioner]'s testimony required corroboration
> deprived [petitioner] of his federal constitutional right to the effective
> assistance of counsel."  The preceding discussion establishes that the
> instruction was substantially correct.  Assuming, solely for purposes of
> [petitioner]'s argument, that had his trial counsel secured the modification of

1

2

3

4

CALCRIM 301 so that the jury was told that "Except for the testimony of Shannon Edmonds and Melvin Norton which is incriminating to the other and which requires supporting evidence, the testimony of only one witness can prove any fact," we do not believe it reasonably probable that the jury would have returned verdicts more favorable to [petitioner]. He has therefore failed to satisfy the requirement of prejudice needed for reversal. [Citations omitted.]

(Id. at 8–9.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Habeas relief is not warranted here. First, the state appellate court reasonably determined that the instructions did not violate petitioner's constitutional rights. It was reasonable to find that one instruction set forth the general rule, while the other described an exception to this rule. Jurors were instructed to read the instructions as a whole and to interpret them in light of each other. The Court must presume that the jury adhered to its instructions and applied the general rule and the exception appropriately. See Richardson v. Marsh, 481 U.S. 200, 206 (1987). Second, as the state court pointed out, the instructions required corroboration only when one defendant's testimony was adverse to the other's. This limiting language defeats petitioner's claim that the instruction singled out the entire testimony of a defendant as less worthy of credibility than the testimony of other witnesses. Rather, corroboration was required in only very specific and narrow circumstances. Petitioner has not shown that this limitation prevented him from putting forth a defense, or adversely affected the fairness of his trial. The state appellate court's determination was reasonable is therefore entitled to AEDPA deference. This claim is DENIED.

20

**B.     Jury Instructions on General and Specific Intent**

21

22

23

24

25

26

Petitioner claims that jury instructions on general and specific intent were "unconstitutionally compound," thereby violating his right to due process. (Pet. at 6; Mem. of P. & A. at 13–16.) He contends that "[h]aving a jury instruction that combines general intent, specific intent, and mental state create[s] a scenario where if the jury returns a general verdict of guilt, it cannot be determined what theory of law a defendant's conviction relies on." (Id., Mem. of P. & A. at 16.)

27

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    This claim was presented only to the state supreme court, which summarily denied it.

2    When presented with a state court decision that is unaccompanied by a rationale for its

3    conclusions, a federal court must conduct an independent review of the record to determine

4    whether the state-court decision is objectively unreasonable.  See Delgado v. Lewis, 223 F.3d

5    976, 982 (9th Cir. 2000).  This review is not de novo.  "[W]here a state court's decision is

6    unaccompanied by an explanation, the habeas petitioner's burden still must be met by

7    showing there was no reasonable basis for the state court to deny relief."  See Harrington v.

8    Richter, 131 S. Ct. 770, 784 (2011).

9    Petitioner's claim is not supported by the record.  The trial court's instructions were

10   clear and specific.  The jury was instructed as follows: **(1)** the charges each defendant faced

11   (Ans., Ex. A, Vol. 2, Part 2 at 14); **(2)** the prosecution had to prove both that a defendant

12   committed the acts charged, but also that he acted "with a particular intent and mental state"

13   (id. at 18); **(3)** "[t]he instruction for each crime and allegation explains the intent and mental

14   state required" (id.); **(4)** which crimes (assault with a deadly weapon and a great bodily injury

15   enhancement) required a showing of general intent and which (murder and accessory to a

16   felony) required a showing of specific intent (id. at 21); **(5)** the definitions of each crime,

17   which included descriptions of the necessary mental states and intent (id. at 50, 59, 62); and

18   **(6)** each crime was a separate crime and must be considered separately and a separate verdict

19   issued for each one (id. at 66).

20   Habeas relief is not warranted here.  First, the instructions, as described above, clearly

21   specifically, and separately informed the jurors of the required intent and mental state for

22   each crime.  Under these instructions, the jury would have known exactly which sort of intent

23   applied to which crime.  Nothing in the instructions can reasonably be seen as confusing or

24   unclear.  Second, the Court must presume that the jurors followed the instructions and

25   applied the proper legal standards.  See Marsh, 481 U.S. at 206.  Petitioner has not overcome

26   this presumption.  Upon an independent review of the record, including a review of the

27   overall charge to the jury, the state court's denial of the claim was not objectively

28

United States District Court
For the Northern District of California

1  unreasonable and therefore is entitled to AEDPA deference.  Also, petitioner has not shown

2  that there was no reasonable basis for the state court to deny relief. Accordingly, this claim is

3  DENIED.

4  **II.    Assistance of Counsel**

5        Petitioner claims that trial and appellate counsel rendered ineffective assistance.  His

6  specific claims are that trial counsel failed to (A) object to the jury instructions on the

7  corroboration requirement for the jury to use an accomplice's testimony against a co-

8  defendant; (B) investigate all meritorious defenses; and (C) made tactical decisions without

9  consulting petitioner.[4]  (Pet. at 6, 6A, 6B; Mem. of P. & A. at 22–27, 31–34.)

10        Claims of ineffective assistance of counsel are examined under Strickland v.

11  Washington, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of

12  counsel, the petitioner must establish two factors.  First, he must establish that counsel's

13  performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

14  under prevailing professional norms, id. at 687–68, "not whether it deviated from best

15  practices or most common custom," Harrington v. Richter, 131 S. Ct. 770, 778 (2011) (citing

16  Strickland, 466 U.S. at 690).  "A court considering a claim of ineffective assistance must

17  apply a 'strong presumption' that counsel's representation was within the 'wide range' of

18  reasonable professional assistance."  Id. at 787 (quoting Strickland, 466 U.S. at 689).

19        Second, he must establish that he was prejudiced by counsel's deficient performance,

20  i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the

21  result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A

22  reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.

23  Where the defendant is challenging his conviction, the appropriate question is "whether there

24

25        [4] Petitioner claims there was also "constructive" ineffective assistance of appellate
26  counsel.  (Pet. at 4.)  Petitioner, however, made no separate arguments from his claims against
   defense counsel, nor has he provided any details regarding his claims of ineffective assistance
   of appellate counsel.  Because his claim is entirely conclusory and undetailed, it fails to meet the
27  specificity requirements of Mayle v. Felix, 545 U.S. 644, 655 (2005) and is DENIED.

28

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792 (citing Strickland, 466 U.S. at 693). The standards of both 28 U.S.C. § 2254(d) and Strickland are "highly deferential . . . and when the two apply in tandem, review is doubly so." Id. at 788 (quotation and citations omitted). "The question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

### A.      Failure to Object to Jury Instruction

The state appellate court rejected this ineffective assistance claim because the instruction was "substantially correct." (Ans., Ex. F at 9.)  Furthermore, even if trial counsel had obtained petitioner's desired modification, that state court concluded that there would have been no prejudice. (Id. at 8–9.)

Habeas relief is not warranted here.  This Court is bound by the state appellate court's determination that the jury instruction was correct under state law. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  Because the instruction was correct, any objection by defense counsel would almost certainly have been denied.  It is both reasonable and not prejudicial for defense counsel to forgo a meritless objection. See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).  Petitioner has made no showing supporting the contrary.  Accordingly, this claim is DENIED.

### B.      Failure to Investigate Defenses

Petitioner claims that defense counsel rendered ineffective assistance by failing to investigate "all meritorious defenses," which were (1) interviewing more witnesses, such as Campbell's mother, to prove imperfect self-defense because the victim had been stalking Patricia Campbell, that the victim was violent when on methamphetamine, and had a hatchet in his car to use as a weapon; (2) finding an expert witness who would testify that petitioner may have had a grand mal seizure during the fight with the victim; and (3) make a Pitchess

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  motion.  (Pet., Mem. of P. & A. at 22–27.)

2      Petitioner presented these claims only to the state supreme court, which summarily

3  denied them.  Therefore this Court will conduct an independent review of the record to

4  determine whether the state-court decisions on these claims were objectively unreasonable.

5  See Delgado, 223 F.3d at 982.

6              **1.    Interviewing Witness**

7      Petitioner asserts that counsel rendered ineffective assistance by not interviewing

8  Campbell's mother, who told petitioner (who told counsel) Campbell was afraid of Uehling

9  because he was stalking her, that Uehling was violent when on methamphetamine and that he

10 had a weapon in his car.  (Pet., Mem. of P. & A. at 22–23, 25.)  This claim fails because

11 petitioner has not provided evidence that this witness would have testified, nor has he

12 provided evidence about what testimony she would have given.  Failure to provide such

13 evidence — such as a declaration from the witness — is a failure to show ineffective

14 assistance.  See Matylinksy v. Budge, 577 F.3d 1083, 1096–97 (9th Cir. 2009); Dows v.

15 Wood, 211 F.3d 480, 486 (9th Cir. 2000).  Upon an independent review of the record, the

16 Court concludes that the state court's denial of the claim was not objectively unreasonable

17 and therefore is entitled to AEDPA deference.  Also, petitioner has not shown that there was

18 no reasonable basis for the state court to deny relief.  This claim is DENIED.

19              **2.    Finding an Expert Witness**

20     According to petitioner, he informed counsel that he has grand mal seizures, owing to

21 his being an epileptic, and that he "may" have had one during the fight with Uehling.  (Pet.,

22 Mem. of P. & A. at 23.)  He contends that counsel rendered ineffective assistance by not

23 presenting an expert witness who would testify to these matters.  (Id.)  Petitioner believes

24 that his having a seizure would explain why he could not remember details about the fight,

25 such as who hit whom first, who had what weapon, etc.  (Id.)

26     Habeas relief is not warranted here.  First, petitioner has failed to establish a

27 reasonable basis to believe that he had a grand mal seizure.  A hazy memory can be caused

28

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California

1   by any number of reasons, and does not itself indicate that petitioner had a seizure.  He has

2   not provided any other indications that he had such a seizure.  Therefore, he has not shown

3   why counsel should have pursued such a defense theory, let alone find an expert witness.

4   Second, "[s]peculation about what an expert could have said is not enough to establish

5   prejudice." Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997).  Upon an independent

6   review of the record, the Court concludes that the state court's denial of the claim was not

7   objectively unreasonable and therefore is entitled to AEDPA deference.  Also, petitioner has

8   not shown that there was no reasonable basis for the state court to deny relief.  This claim is

9   DENIED.

10          **3.      Pitchess Motion**

11          Petitioner claims that defense counsel rendered ineffective assistance by failing to

12   make a Pitchess motion.  Under California's Pitchess procedure, a criminal defendant has a

13   limited right to discovery of peace officer personnel records, specifically of complaints made

14   against the officer.  Pitchess v. Superior Court, 11 Cal. 3d 531 (1974); Cal. Penal Code

15   §§ 832.7, 832.8; Cal. Evid. Code §§ 1043–1045.  Because counsel failed to make such a

16   motion, counsel did not know whether the police officers who were testifying at trial were

17   under suspension, or being investigated for harassment, excessive force, or perjury.  (Pet.,

18   Mem. of P. & A. at 25.)

19          Habeas relief is not warranted here.  Petitioner gives no reasons that counsel should

20   have filed a Pitchess motion.  He provides no reason to question the veracity of any police

21   officer who testified, or what Pitchess discovery likely would have uncovered.  Without any

22   reasons justifying filing such a motion, petitioner has not shown that counsel's performance

23   was deficient, much less whether such performance resulted in prejudice.  Upon an

24   independent review of the record, the Court concludes that the state court's denial of the

25   claim was not objectively unreasonable and therefore is entitled to AEDPA deference.  Also,

26   petitioner has not shown that there was no reasonable basis for the state court to deny relief.

27   This claim is DENIED.

28

C.    **Tactical Decisions**

The trial judge admitted to counsel that he was "slightly . . . acquainted with Patricia Campbell":

> [T]en years ago my next door neighbor was Dean Farris, who used to own the bowling alley and recruited me to bowl with him on a team or league.  And Patricia Campbell's parents, I believe were the two other members of this four-person team.
>
> I knew them only for the period of that league, which was — can't even remember how long.  I believe it was a couple of months, saw them only at the bowling alley.  I knew her slightly because she would be there with them.  I haven't spoken to them for ten years.  It's not something that causes any prejudice.  I just thought I'd disclose.

(Ans., Ex. B, Vol. 3, Part 1 at 662–64.)  Defense counsel for petitioner said, "We're talking about a period of time when she would have been 12 or 13 years old."  (Id. at 663.)  The trial judge said, "Yeah, younger probably."  (Id.)  Counsel for both defendants stated that they had "no issue" with the judge's slight acquaintance with Campbell or her family.  (Id. at 663–64.)

Petitioner claims that defense counsel rendered ineffective assistance by failing to consult with him before waiving any objections to the trial judge's disclosure.  (Pet. at 6C; Mem. of P. & A. at 34–36.)  By implication, petitioner is also claiming that the trial judge impartiality was in question and therefore he was deprived of a fair trial.

An attorney has a duty to consult with his client regarding "important decisions," including questions of overarching defense strategy.  Strickland, 466 U.S. at 688.  That obligation does not require counsel to obtain the defendant's consent to "every tactical decision," however.  Taylor v. Illinois, 484 U.S. 400, 417–18 (1988).  But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate.  A defendant has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U.S. 745, 751 (1983).

United States District Court
For the Northern District of California

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

1    The Due Process Clause guarantees a criminal defendant the right to a fair and

2    impartial judge.  See In re Murchison, 349 U.S. 133, 136 (1955); Kennedy v. Los Angeles

3    Police Dep't, 901 F.2d 702, 709 (9th Cir. 1990).  In order to obtain federal habeas relief on a

4    claim that a judge was not impartial, a federal court must be convinced that a particular

5    influence, "under a realistic appraisal of psychological tendencies and human weakness,"

6    poses "such a risk of actual bias or prejudgment that the practice must be forbidden if the

7    guarantee of due process is to be adequately implemented."  Withrow v. Larkin, 421 U.S. 35,

8    47 (1975).  Federal habeas relief is therefore limited to those instances where there is proof

9    of actual bias, or of a possible temptation so severe that one might presume an actual,

10   substantial incentive to be biased.  See Del Vecchio v. Illinois Depot of Corrections, 31 F.3d

11   1363, 1380 (7th Cir. 1994) (en banc), cert. denied, 514 U.S. 1037 (1995).  Habeas relief was

12   unavailable in Del Vecchio, which presented rather exceptional circumstances.  In that case,

13   the state trial judge was not required to disqualify himself because he had been involved in

14   prosecution of the defendant for prior murder 14 years previously, and despite a contention

15   that he had personal stake in affirming validity of evidence concerning prior murder when

16   evidence that conviction was offered in the present sentencing proceeding, and that judge felt

17   personal responsibility for the present murder because of decision leading to early release

18   from prison for the prior murder.  (Id. at 1379–80.)

19       Habeas relief is not warranted here.  First, counsel's decision did not implicate any

20   basic trial rights, such as testifying, taking an appeal or pleading guilty.  Second, petitioner

21   has not shown prejudice.  Even if counsel had moved to disqualify the trial judge, petitioner

22   has not shown that such a motion would have been successful.  The trial judge admitted that

23   he knew Campbell and her parents slightly years ago for a brief time.  There was no

24   indication that he was ever close friends with the Campbells, or would be influenced in any

25   way by his minor connection to them.  Without more, defense counsel would have been

26   unable to show that the trial judge's impartiality should reasonably have been questioned.

27   Any motion based on such slight evidence would likely have been denied.  Counsel's failure

28

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   to consult with petitioner, then, cannot have resulted in prejudice.  It is both reasonable and

2   not prejudicial for defense counsel to forgo a meritless objection.  See Juan H., 408 F.3d at

3   1273.

4          Petitioner's implied claim that he received an unconstitutionally unfair trial because

5   the trial judge was biased also fails.  As stated above, federal habeas relief is available when

6   there is proof of actual bias, or of a possible temptation so severe that one might presume an

7   actual, substantial incentive to be biased.  Del Vecchio, 31 F.3d at 1380.  The trial judge's

8   disclosure of his slight acquaintance with Patricia Campbell certain does not constitute proof

9   of actual bias or a severe possible temptation.  If habeas relief was unavailable under the

10  extraordinary circumstances of Del Vecchio, it cannot be available here.

11         Upon an independent review of the record, the Court concludes that the state court's

12  denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA

13  deference.  Also, petitioner has not shown that there was no reasonable basis for the state

14  court to deny relief.  This claims is DENIED.

15  **III.    Sufficiency of the Evidence**

16         Petitioner claims that the prosecution did not prove malice murder.  He does not deny

17  that he participated in the homicide.  Rather, he simply intervened on Norton's behalf when

18  Norton was fighting the victim, a fight which happened to escalate to homicide.  He contends

19  that the prosecution never produced evidence "at what time . . . [he] possess[ed]" malice

20  aforethought.  (Pet. at 6 and 6A; Mem. of P. & A at 8–12.)  This claim was raised only by

21  way of a habeas petition to the state supreme court, which summarily denied it.

22         Evidence presented at trial showed petitioner's direct involvement in the killing of

23  Uheling.  First, petitioner admitted stabbing the victim.  (Ans., Ex. F at 5.)  Second, he

24  commonly carried a knife and an ASP baton, a metal device the shape of a telescope that

25  expands lengthwise, a sort of billy club.  (Id. at 3.)  Third, there was evidence that petitioner

26  was motivated by Uheling's continued sexual and romantic pursuit of Campbell, petitioner's

27  girlfriend.  Fourth, witnesses heard Uheling being beaten and attacked severely and saw two

28

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

men leaving the scene where Uheling's corpse was found.  Fourth, the investigating pathologist concluded that Uheling died from sharp force injuries, including a stab to the neck that cut the carotid artery, and a stab wound the ribs, which also penetrated the lung. He also concluded that the victim had blunt force injuries from top to bottom, probably caused by a boot or club.  "Round dots on either side on either side of his belly were consistent with the end of [petitioner]'s ASP expandable baton," as were blunt force injuries to the right leg.  Furthermore, the victim's left thyroid cartilage was broken which resulted from "manual strangulation or from blunt force injury from a swinging blow or crushing with significant force."  (Ans., Ex. B, Vol. 3 at 789–97, 803–04.)

When reviewing a state court's conviction, a federal court must determine only whether, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. 307, 319 (1979).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  <u>Id.</u> at 324.  In sum, "the only question under <u>Jackson</u> is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2065 (2012).

Murder, under California law, is defined as the "unlawful killing of a human being, or a fetus, with malice aforethought."  Cal. Penal Code § 187.  Malice may be either express or implied.  <u>Id.</u> § 188.  It is express "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature."  <u>Id.</u>  It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."  <u>Id.</u>  Malice can be inferred from the circumstances of the killing.  For example, malice was found when the victim, despite pleading for his life, was beaten for 15 to 20 minutes and left lying with blood on his face and mouth.  *People v. Beyea*, 38 Cal. App. 3d 176, 189 (Cal. Ct. App. 1974).  In another case, "the jury could have easily inferred malice from the repeated violent beatings appellant inflicted upon the victim which ultimately resulted in his death and concluded that the assault was neither justified nor the act

United States District Court
For the Northern District of California

of one incapable through intoxication of entertaining malice." People v. Matta, 57 Cal. App. 3d 472, 480 (Cal. Ct. App. 1976).

Habeas relief is not warranted here. There is copious inferential evidence of malice. Evidence was presented at trial that the victim, the object of petitioner's anger (over Uehling's continued pursuit of petitioner's girlfriend), was severely beaten, stabbed, and strangled to death. There was also evidence that many of the injuries could have been caused by the very weapons petitioner possessed. These facts are quite similar to those in Matta and Beyea, on which malice was found. The killing of Uehling involved such a high degree of violence that petitioner's contention that the fight simply got out of control or that Uehling's death was inadvertent is not plausible. On this record, the jury's finding was not so insupportable as to fall below the bare threshold of rationality. Coleman, 132 S. Ct. at 2065.

Petitioner, however, asks that the Court believe his version of events. Stated another way, petitioner asserts that the jury should have believed his defense rather than the prosecution's case. This claim is in essence a challenge to the jury's credibility determination in favor of the prosecution. A jury's credibility determinations, however, are entitled to near-total deference. Jackson, 443 U.S. at 306. Indeed, if confronted by a record that supports conflicting inferences, such as the instant case, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. Viewing petitioner's arguments under this standard, this Court must defer to the jury's credibility determination in favor of the prosecution's arguments and evidence, and its rejection of petitioner's defense. Upon an independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA deference. Also, petitioner has not shown that there was no reasonable basis for the state court to deny relief. Accordingly, this claim is DENIED.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**IV.    Trial Court's Denial of Right to Impeach a Witness**

Petitioner claims that the trial court abused its discretion when excluded impeachment evidence against a prosecution witness, Dr. Thomas Gill, a pathologist, who testified as to the manner and cause of Uehling's death.[5]  The defense sought to impeach Gill with the following facts, all of which he had admitted at a hearing conducted outside the presence of the jury:  (1) his arrests in 1993 and 1994 in Indiana for driving under the influence, (2) a prosecutor had smelled alcohol on his breath while he was at work in Indiana, (3) his dismissal from his employment at a coroner's office in Indiana, and (4) his admission that while working in Indiana he had determined that a baby had died of shaken-baby syndrome, a determination that was later shown to be mistaken.  (Ans., Ex. B, Vol. 3 at 775–77.)  Gill had undergone treatment for his alcoholism as part of a diversion program in both Indiana and California, which helped him complete his probation.  (Id.)  The Medical Board of California was aware of his participation in the diversion program.  (Id.)

The trial court denied defense counsel's request to impeach Gill at trial with these facts "because of their age and the lack of relevance to the facts of this case."  (Id. at 780–81.)  It did allow defense counsel to ask Gill at trial, "Have you ever been incorrect and shown to be incorrect at a later time?"  (Id. at 781.)

This claim was presented only to the state supreme court, which summarily rejected it.

State and federal rulemakers have broad discretion in excluding evidence from trials.  Holmes v. South Carolina, 547 U.S. 319, 324 (2006).  This discretion is limited by a defendant's constitutional rights to due process and to present a defense.  Id.  Furthermore, this Court recognizes that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice,

---

[5] It appears that in his petition to the state supreme court, petitioner presented this as an abuse of discretion, rather than a due process or Confrontation Clause, claim.  Even though it appears that petitioner did not present (and therefore did not exhaust) a federal constitutional claim to the state court, this Court will rule on the claim as if it had been presented and exhausted.

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

confusion of the issues, or potential to mislead the jury." Id. at 326.

Habeas relief is not warranted here.  The state supreme court reasonably determined that the trial court's ruling was constitutionally correct.  By the time of petitioner's trial in 2010, Gill's drunk driving record was 16 years old, and his probation had ended ten years before.  It was not unreasonable for the trial court to exclude such evidence on the basis of age and its irrelevance to the subject matter of Gill's testimony, that is, the cause of the victim's death.  Gill's prior misdiagnosis was relevant and the trial court allowed defense counsel to ask a relevant question about that.  While petitioner was quite restricted in what he could ask, the Court cannot say that the trial court violated his right to present a defense.  An examination of Gill's prior misdiagnosis might well have constituted an undue expenditure of trial time, considering the age of the misdiagnosis and that it involved the death of an infant.  Thus, the Court cannot say that the state supreme court's rejection of this claim was unreasonable.

Also, petitioner has not shown prejudice.  Unlike the case Gill misdiagnosed, here the cause of Uehling's death was clear and beyond debate:  petitioner admitted stabbing the victim; he commonly carried a knife and an ASP baton; witnesses heard Uheling being beaten and attacked severely and saw two men leaving the scene where Uheling's corpse was found; Gill concluded from the state of Uehling's corpse that he died from sharp force injuries, including a stab to the neck that cut the carotid artery, and a stab wound the ribs, which also penetrated the lung; Gill also concluded that the victim had blunt force injuries from top to bottom, probably caused by a boot or club.  "Round dots on either side on either side of his belly were consistent with the end of [petitioner]'s ASP expandable baton," as were blunt force injuries to the right leg; and there was evidence that Uehling's left thyroid cartilage was broken which resulted from "manual strangulation or from blunt force injury from a swinging blow or crushing with significant force."  This overwhelming evidence that Uehling was stabbed and severely beaten to death render harmless any alleged error the trial court made in excluding impeachment evidence.  The strength of this evidence also shows

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

United States District Court
For the Northern District of California

1  that the state court's rejection of this claim was reasonable and is entitled to AEDPA

2  deference.  Upon an independent review of the record, the Court concludes that the state

3  court's denial of the claim was not objectively unreasonable and therefore is entitled to

4  AEDPA deference.  Also, petitioner has not shown that there was no reasonable basis for the

5  state court to deny relief.  This claim is DENIED.

6  **V.    Prosecutorial Misconduct**

7          Petitioner claims that the prosecutor committed misconduct by (1) playing portions

8  of petitioner's recorded statements to police, rather than by playing the entire recording; and

9  (2) lying to the jury when he said that petitioner "sounded resentful" when the prosecutor

10 (and the police) continued to ask him questions to obtain the truth.  Petitioner cites one

11 example of this second sort of misconduct:

12          [During cross-examination, petitioner] sounded resentful, just down right hurt
            that I kept asking him questions instead of taking his first lie and stopping there
13          and taking the lie.  [The police] and I were both hammering him to try and get
            something close to the truth and he was sounded like his feelings were hurt
14          from it.

15 (Pet., Mem. of P. & A. at 241.)  These procutorial misconduct claims were presented only to

16 the state supreme court, which summarily denied it.

17         A defendant's due process rights are violated when a prosecutor's conduct "so

18 infected the trial with unfairness as to make the resulting conviction a denial of due process."

19 Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation and internal quotation omitted).

20 Under Darden, the first issue is whether the prosecutor's conduct was improper; if so, the

21 next question is whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413

22 F.3d 1101, 1112 (9th Cir. 2005).

23         Habeas relief is not warranted here.  The state court's rejection of these claims was

24 reasonable.  First, petitioner's fails to specify why playing portions of his statements to police

25 was improper, much less how the prosecutor's conduct infected the trial with unfairness.

26 Because his claim is entirely conclusory and undetailed, it fails to meet the specificity

27 requirements of Mayle v. Felix, 545 U.S. 644, 655 (2005).

28

United States District Court
For the Northern District of California

Second, petitioner has failed to show that the prosecutor's remarks were improper, much less that they infected the trial with unfairness. In sum, petitioner claims that it was improper for the prosecutor to impugn his credibility by calling his statements lies and describing his reactions to cross-examination "resentful." A prosecutor may refer to the defendant as a "liar" as long as the prosecutor is simply asking the jury to make such an inference from the evidence. United States v. Moreland, 622 F.3d 1147, 1161 (9th Cir. 2010). Here, the prosecutor's statements were similar to those found permissible in Moreland.

Furthermore, petitioner has not shown prejudice. As described above, petitioner admitted to stabbing the victim, and there was sufficient physical evidence of his participation in the death of Uehling to support the jury's verdict of murder. The alleged mistakes made by the prosecution cannot overcome the weight of this evidence.

Based on the foregoing, the state court's rejection of petitioner's prosecutorial misconduct claim was reasonable and is entitled to AEDPA deference. Upon an independent review of the record, the Court concludes that the state court's denial of the claim was not objectively unreasonable and therefore is entitled to AEDPA deference. Also, petitioner has not shown that there was no reasonable basis for the state court to deny relief. This claim is DENIED.

**VI.    Admission of Evidence**

Petitioner claims that the trial court violated his right to due process when it admitted photographs of "novelty weapons" in his house (Pet., Mem. of P. & A. at 31–33.) Petitioner presented this claim only to the state supreme court, which summarily denied it.

This claim lacks merit. The trial court excluded this evidence, despite the prosecution's attempts to have it admitted. (Ans., Ex. B, Vol. 5, Part 1 at 1244–49.) Because the photographs were not admitted, the jury never saw them, and therefore they cannot have had an effect on the jury's determination.

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

1    Because the claim is flatly contradicted by the record, the state court's rejection of the

2    claim was reasonable and is entitled to AEDPA deference.  Upon an independent review of

3    the record, the Court concludes that the state court's denial of the claim was not objectively

4    unreasonable and therefore is entitled to AEDPA deference.  Also, petitioner has not shown

5    that there was no reasonable basis for the state court to deny relief. This claim is therefore

6    DENIED.

### VII.   Cumulative Error

8        Petitioner claims that even if the errors individually do not justify relief, the

9    cumulative effect of all errors resulted in a fundamentally unfair trial.  (Pet., Mem. of P. & A.

10   at 37a.)  Petitioner presented this claim only to the state supreme court, which summarily

11   denied it.

12       In some cases, although no single trial error is sufficiently prejudicial to warrant

13   reversal, the cumulative effect of several errors may still prejudice a defendant so much that

14   his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893–95 (9th Cir.

15   2003).  Where there is no single constitutional error existing, nothing can accumulate to the

16   level of a constitutional violation.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir.

17   2002).

18       Because petitioner has not shown a single constitutional error, his cumulative error

19   claim necessarily fails.  Upon an independent review of the record, the Court concludes that

20   the state court's denial of the claim was not objectively unreasonable and therefore is entitled

21   to AEDPA deference.  Also, petitioner has not shown that there was no reasonable basis for

22   the state court to deny relief. Accordingly, this claim is DENIED.

### CONCLUSION

24       The state court's adjudication of the claim did not result in a decision that was

25   contrary to, or involved an unreasonable application of, clearly established federal law, nor

26   did it result in a decision that was based on an unreasonable determination of the facts in

27   light of the evidence presented in the state court proceeding.  Accordingly, the petition is

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION

1   DENIED.

2         A certificate of appealability will not issue.  Reasonable jurists would not "find the

3   district court's assessment of the constitutional claims debatable or wrong."  Slack v.

4   McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from

5   the Ninth Circuit.

6         The Clerk shall enter judgment in favor of respondent and close the file.

7         **IT IS SO ORDERED.**

8   DATED:  March 19, 2015

9                                                    CHARLES R. BREYER
                                                     United States District Judge

No. C 13-2490 CRB (PR)
ORDER DENYING PETITION